UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

v.                                          CASE NO: 2:17-cr-83-FtM-38MRM

DILLON SHUTT

_____/

## ORDER

Before the Court are Defendant Dillon Shutt's Motion for Compassionate Release (Doc. 185) and the Government's opposition (Doc. 191). For the below reasons, the Court denies the motion.

Defendant is in prison for distributing and possessing child pornography. He has served five years and has another four to go.[1] But he moves for immediate release because his deafness, cerebral palsy, Asperger's Syndrome, and anxiety disorder make prison life isolating and near impossible.[2] Defendant says that he cannot communicate with the other inmates and guards because nobody knows sign language and he

---

[1] Defendant is serving a 135-month sentence for distributing child pornography and a concurrent 120-month sentence for possessing child pornography. (Doc. 139). His projected release date is July 19, 2028. (Doc. 185-1 at 2).

[2] Defendant does not move for compassionate release because his medical circumstances are extraordinary and compelling reasons under § 1B1.13(b)(1). In fact, he admits that "he can engage in basic functions of daily living—he can feed, bathe, and clothe himself, and he is able to show up for work and perform his duties." (Doc. 185 at 12). He only moves under the catchall provision of "other reasons" in § 1B1.13(b)(5).

cannot always read their lips.  The communication barrier also prevents him from maintaining good relationships with prison staff because he often cannot hear their questions, orders, and announcements. Communication is also an issue with his family because his prison supposedly does not have the technology for him to do so.  Defendant also indicates he is receiving subpar medical care with his hearing aids.

A court generally cannot modify a term of imprisonment once imposed.  *See* 18 U.S.C. § 3582(c).  But there is a statutory exception known as "compassionate release."  18 U.S.C. § 3582(c)(1)(A).  After a defendant exhausts his administrative remedies, the court may reduce a sentence if (1) the 18 U.S.C. § 3553(a) factors support early release; (2) the reduction follows applicable policy statements issued by the Sentencing Commission—i.e., the defendant "not [be] a danger to the safety of any other person or to the community," U.S.S.G. § 1B1.13(a)(2); and (3) extraordinary and compelling reasons justify a reduction. "Because all three conditions — *i.e.*, support in the § 3553(a) factors, extraordinary and compelling reasons, and adherence to § 1B1.13's policy statement — are necessary, the absence of even one would foreclose a

sentence reduction." *United States v. Tinker*, 14 F.4th 1234, 1237–38 (11th Cir. 2021).

The Court need only examine the § 3553(a) factors to know the interest of justice do not justify compassionate release and that Defendant remains a danger to the community. The § 3553(a) factors include (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for the sentence imposed to afford adequate deterrence; (4) the need to protect the public; (5) the need to provide the defendant with educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) the pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwarranted sentencing disparities; and (10) the need to provide restitution to victims. 18 U.S.C. § 3553(a).

Defendant is imprisoned not just for downloading and possessing hundreds of images of children being sexually abused, but also for blackmailing a preteen girl to send him sexually explicit videos of herself.

He even instructed her on what to do in the videos.  And then Defendant did not keep the images to himself.  He posted images and videos of his victim to his personal, but publicly available, web page that got over 1,000 views.  What's worse is he did not stop there.  He posted a link to the images on the social media account of his victim's friend with the comment, "check out G.P. doing something she shouldn't be doing."

It is true that Defendant has many medical and mental health issues that the Court knew about when it sentenced him.  And the conditions—especially his bi-lateral hearing loss—persuaded the Court to vary downward significantly and sentence Defendant to a fraction of his calculated guidelines range.  To be clear, Defendant's guideline range was 360-480 months.  (Doc. 140).  Yet it 135 months (one-third lower than the low-end guidelines range) to account for Defendant's expected difficulties in prison.

And although prison has been hard, the record shows Defendant has made positive strides.  For example, Defendant's recent work performance evaluation says he "[i]s a highly motivated worker, highly motivated to learn new skills."  (Doc. 191-1 at 1).  It also indicates that he responds well to supervision and instruction, and his ability to work

with others is "outstanding," he "gets along well with everyone," and is "very popular." (Doc. 191-1 at 1).

What's more, the prison has been addressing Defendant's hearing issues. A few weeks before he filed his compassionate release motion, he had a hearing aid follow-up appointment with an audiologist "for a fitting of his new Phonak acrylic skeleton ear molds." (Doc. 191-2). The progress note said, "I connected [the hearing aids] to the software and repeated his feedback manager and reprogrammed his devices based on the new ear molds. [Defendant] report[ed] improved sound quality and no further programming changes were made." (Doc. 191-2).

At bottom, letting Defendant avoid serving half of his sentence as originally imposed would fail to reflect the seriousness of the offense, promote respect for the law, provide just punishment, or afford adequate deterrence. Defendant's offense conduct gives this Court considerable hesitation to find that he no longer poses a danger to the community. *Cf. Smith v. Doe*, 538 U.S. 84, 103 (2003) (expressing "grave concerns over the high rate of recidivisms among convicted sex offenders and their dangerousness as a class"). The Court thus denies Defendant's motion.

Accordingly, it is

**ORDERED:**

Defendant's Motion for Compassionate Release (Doc. 185) is

**DENIED**.

**DONE and ORDERED** in Fort Myers, Florida on June 28, 2024.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:    All parties of record